P.A. Good morning. May it please the Court, I am Marcolina Panto, appearing for Alameda County Att. P.A. Asha Perez. I do will do request to reserve 2-3 minutes for review. This is the second 9th Circuit appeal that this case has been through. The first time the district court threw this case out for procedural reasons on summary judgment. In the appeal, one claim survived. That was the sexual discrimination claim that was sent back to the district court. Back in the district court, I took objectives as subject matter jurisdiction with a single state-based claim remaining. There had been several federal claims that had been dispensed. In the proceedings, the second time, the district court did not allow one appearance and threw the case out again on summary judgment, this time for factual reasons. In the judgment that the district court made, it drew a hard line between discrimination and harassment. It seemed as if the district court was struggling with what the 9th Circuit had said, but we have clear authority in California case law. It's the Ogilevsky case from 1993, a California appellate case, that holds that the difference between discrimination and harassment is really whether there is a tangible loss of benefits. Here, the district court did find that there was a tangible loss of benefits. The tangible loss of benefits was the pay step down to less than a year, and the Internal Affairs Investigation Court also found that that was an adverse employment action. But because that Ogilevsky case tends to make clear, the line between discrimination and harassment is very fine. Harassment will qualify as discrimination, and discrimination can take the form of harassment. So it's not clear from the court's order which facts were really considered and which facts were not considered. One of the most troubling aspects of this case is perhaps demonstrated conveniently by ER 17. There was a sentence left out of the brief that was included about Deputy Devine testifying that she witnessed male deputies searching for lost paperwork at a certain point in time. That testimony was corroborated by Plaintiff herself. What is the relevance of that? The relevance of that is that Plaintiff had complained through the chain of command that she was being treated differently about discrimination, about a hostile work environment, which we would typically describe as harassment. Here we're pleading it as discrimination. After that complaint, I'm sorry, I don't understand what the point of that is, you didn't answer my question. What is the relevance of the fact that she saw certain men going looking for lost paperwork? Immediately after she complained through the chain of command, Deputy Devine saw other male deputies searching for paperwork, and she was asking what was going on. I'm sorry, what was, so what if they were looking for paperwork? Well, sure, Plaintiff was sent to the Internal Affairs Investigation because Sergeant Perugia and they were looking for their own lost paperwork. Right. Okay, so they were looking for it, but they couldn't find it. So what was the problem? There was some glitch in the paperwork at AC Transit Unit. Plaintiff was not given that same opportunity to search for her own paperwork. Yet Sergeant Perugia found the paperwork. He found paperwork of hers that was not submitted. So this theory of disparate treatment is that male deputies were given a chance to find lost paperwork because there was some problem in the unit with lost paperwork, but Plaintiff's paperwork was found by her sergeant. I have no idea in the world whether it's the same amount of paperwork, whether it's his old paperwork, whether it was his new paperwork, whether, I mean, it could be that they got up one morning and they were going to hand in their paperwork from the day before and they couldn't find it, so they were looking for it. There's a lot of testimony about how the paperwork process works, where different trees were and how things were submitted, but the way the facts look, it's that Deputy Devine and Deputy Perez were treated with a completely different standard, and it seemed as if Plaintiff was set up to fail. But the evidence, I mean, as this demonstrates, was pretty faint for them. I mean, they thought that for sure, and they were quite adamantly positive about it, but if that sort of testimony is the best they could do, i.e. they saw that man looking for lost paperwork, I think it doesn't tell you very much, does it? Well, it's corroborated by the testimony of Ms. Hornsby. Ms. Hornsby is Captain Buchanan's assistant, and so Ms. Hornsby heard this meeting that Plaintiff had with Captain Buchanan, the highest... That's something completely different, right? No. No, that was the meeting that Plaintiff asked Ms. Hornsby to set up to complain about what she perceived to be disparate treatment and what other women also perceived to be disparate treatment. That's a meeting that... He said he didn't remember it, and so... He doesn't remember it at all. Well, it's a long meeting. It was trying. It's hard to believe that he doesn't remember that. And the fact is, therefore, he's unbelievable, and therefore what? Well, there's got to be a credibility determination made by a jury. In that case, the cases are McCabe from California and McSherry from the Ninth Circuit. But what does it have to do with the question of disparate treatment? Basically, all we have for us at this point, back from the Ninth Circuit, is, from the earlier opinion, is disparate discipline. That's all that's left. Is that right? Disparate treatment, yes. I've said continually disparate discipline. In other words, my understanding of what happened was, is that because of the position problems, the issue that's left here is whether the whole disciplinary proceeding itself was disparate Is that right? That sounds correct. Is that problematic for you? Because, if I recall correctly, your client's male supervisor received the same exact discipline as Perez. I mean, doesn't that undermine your claim here? It's not exactly the same discipline. And he was actually able to advance through the ranks. So, from these arguments... Why isn't it exactly the same discipline? I thought it was the same discipline. I don't think he was also dishonest formally, in the same way that Blank was. I think that's more significant for her. But her conduct, and this is the other thing, her conduct across the board, when you compare it to everyone else, is far more egregious. I mean, she had the actual lying to the, the finding that was made that she lied to the internal affairs people, or to the people who were investigating. Nobody else had that, did they? Well, she... Did anybody else have that? As far as I know, no. So, I'm just trying to figure out how we can say that, you know, what occurred here in terms of the discipline was, was, you know, discreet. That's part of the credibility issue as well. In the sense that plaintiff swears to this day, she did the same thing that everyone else did. There was no inflation of statistics. The paperwork doesn't show a large, any inflation of statistics. There was, there were a few administrative problems, apparently, that caused some citations to go away. That would cause discrepancy in the statistics. She believed that they were processed, and then they actually did not meet. It's still not a massive problem. So, as plaintiff was going through internal affairs, she was still complaining about being treated differently. This whole process wasn't fair. She, in fact, went to her union at that time. It seems as if she's being set up, is what she was saying. It seems as if this paperwork was being used against her. But she swears to this day that there was no inflation of statistics. And I agree completely with your argument. It is, it is a problem, and it's been very challenging. Thank you very much for your time. Please. Thank you very much. May it please the Court. My name is Christine Mulati. I represent the Alameda County Sheriff's Office in this matter. The decision of the District Court should be affirmed because of three reasons. First, the Court clearly had intended for supplemental jurisdiction over the remaining State Discrimination Claim. In this case, it is undisputed. You have an argument. So move it on. Okay. I'm sorry. I thought she started there. No, she did not. She had an argument. Okay. The second point on why the District Court's decision should be affirmed is because it did not abuse its discretion by saying to continue or postpone the summary judgment motion to allow the plaintiff more time for discovery. Plaintiff's time? No, no, no, no, no. Okay. All right. Let's get to the big one, I think. The third one is that the appellant did not produce specific and substantial evidence that her documentation failures were a pretext for gender discrimination. The most significant evidence in this case is the affirmative evidence of actually no discrimination, which your honors have pointed out at least two of those. One is the fact that Plaintiff's male supervisor, Sergeant Arusha, who was responsible for reviewing and approving her paperwork, was subject to the very same investigation and disciplined in the very same way with the one-year, one-step temporary pay reduction that the plaintiff suffered should he have gotten court since he was a supervisor. These were not his failures. He did not fail to turn in arrest reports on an arrest he executed. He did not fail to give citations to 19 individuals for parking citations and then submit those to the Department of Motor Vehicles. You see, Sunday, an individual is going to get a communication through the DMV and they have 19 citations and they never receive the citation. He did not do any of those apps. These were all committed by Deputy Perez. What he failed to do was ensure that she was submitting complete paperwork. And so LAPD Sheriff's Office Management imposed the same discipline on him. That fact alone, it gave any possibility this was something that was targeted at her because of her gender. Second, affirmative evidence of non-discrimination. The question I'm looking for is, if she had demonstrated, I mean, I gather that if she had demonstrated specifically that there were men who had done the same thing that she did and had court-disciplined, she would have a case. She tried to do that, but she didn't have a very big one. Yes. If she had done it. And so the problem with her evidence is behind it. What she was trying to prove is whether she adequately demonstrated. Correct. She may conclude her assertions that there were similarly situated male deputies who did the same thing and weren't disciplined. But she provided no evidence of who those individuals were, what evidence or documentation they failed to submit, how many times and over what period of time. The only person she cites was one of the male deputies on her squad, Deputy Holm, and her allegation there is that he turned in his time sheets late and he turned in his patrol logs late. She doesn't say when, how many times or over what period of time or how she has personal knowledge of that fact. Moreover, that's not the conduct she was charged with engaging in. She was charged with engaging in much more severe conduct than that over a course of two years. There was a slight amount about Sergeant Wolf's comments. I mean, it's true that Ms. Perez complained about Sergeant Wolf's comments, but her supervisors failed to report or investigate her complaint. Is this some evidence of pretext? I don't believe so. So here's what she alleges. She says that she complained directly to Sergeant Wolf that he made the protective class comment and the pink flamingos comment about somebody other than plaintiff. Those don't necessarily relate to gender. I've supplied comments that referring to the B word towards female is not necessarily a misogynist term that indicates a gender bias. Moreover, the important thing about Wolf is that he was nowhere involved in the decision to either initiate the investigation or recommend or impose the discipline. He wasn't interviewed in the investigation. He had no involvement. She has a set of, I mean, part of the problem here is that there's a lot of evidence that he hasn't been presented very well in terms of organizing it, but there is a fair amount of evidence. One of the suggestions is that they weren't following their own disciplinary policies in a number of respects. You said in your brief, as I recall, that that doesn't matter, but my understanding of discrimination was that it does matter in terms of the pretext. If you have a misdemeanor, and you expose it in your particular instance, that is some indication that you are treating this person differently. Is that not true? I believe this is one area where California law diverges from NYSERDA law in terms of what it takes to prove pretext. And I mean NYSERDA law pursuant to Title VII. I've cited two California cases. One is a concurrent opinion from the California Supreme Court case that says an employer's failure to follow its own policies is not evidence of pretext. That is the California law. So the concurrent opinion is not the California law. What's the other opinion? And the other opinion is an opinion also called out in the California Court of Appeal opinion. It wasn't that one, as I recall. I did cite the other one that specifically had that as well. There was no allegation in this case that the defendant did not follow its own disciplinary policies. Captain Seabrook has the disciplinary process attached to this declaration that was followed to a T. The only allegation with respect to a policy that wasn't followed was the policy to commence an investigation into allegations of sex-based harassment. And there is a dispute here. What is undisputed is the plaintiff's complaint of a hostile work environment. She claims that was a hostile work environment based on sex, and she told people that. Alameda County Sheriff's Office denies that. When she complained of a hostile work environment, she told people no facts that linked it to gender. Well, that's usually what's been claimed. Primarily, that is what is linked to the hostile work environment. Actually, I would disagree with that. I think employees use the hostile work environment loosely in a vernacular when they're not getting along with their supervisor without linking it to a protected class. What about that? I think Landry, Burris, and Devine all testified that they were penalized for content-linked paperwork. But their male colleagues received lenient treatment. I guess, why isn't that enough to create a material issue of fact? If we look at Devine, first of all, they all target both. Both was not involved in this disciplinary decision. Devine talks about the fact that she was put on a performance improvement plan for, in part, submitting late-time sheets of paperwork. That's not the same conduct that the plaintiff is accused of engaging in. The plaintiff's conduct was much more severe. Failure to submit arrest reports. Failure to log evidence. And so, therefore, what? And so, therefore, they're not comparable. It's not an offense of comparable size. If the suggestion is that Devine was disciplined for what she did, but they wouldn't have been for what she did, then it's no evidence of having a different disciplinary regime for women and for men. Well, that's a conclusion, once again. There's no evidence that that was, in fact, the case. Where is the evidence of the men and what they did? What they didn't? The problem is that Devine isn't like Duranis. The problem is that she doesn't demonstrate what she was trying to demonstrate when she deferred to a discipline. Yes. I mean, she's used the example. I mean, she doesn't make women like Duranis exactly. She doesn't. You're trying to demonstrate there's a pattern of discriminatory discipline. I don't know why it matters. It's the same discipline. I'm not going by the factors. I want you to try the Me Too cases. They look at, take this what the witness, conduct the witness, somebody else's argument. It's entirely tied into particular cases. The question is whether this would have been pertinent evidence if she had demonstrated that Devine was doing something differently than made in Devine's situation. Yes. Even if Devine wasn't like Duranis. Yes. I agree. I'm in their front of Me Too argument. Yes. You're trying to talk it. I thought you were saying otherwise. Yes. And on the Me Too argument, then it's going to need to be the same decision maker. It's going to need to be not remote in time. It's like search and solve, it's all worse than discipline or situation. Why does it have to be not remote in time? To whether or not it is indicative of discrimination. And one of the factors under whether the Me Too evidence seems to me that if there was a, I don't know, for a long period of time, I wouldn't care how long the person's situation was. Well, because people change. People who are in charge change. I mean, Sgt. Stallworth was in an entirely different position. I didn't ask you. I'm just a person. Anyway, go ahead. I'd like to go back to the other evidence, affirmative evidence. Okay. Because there is affirmative evidence of nondiscrimination, which includes the discipline of the supervisor, the just cause findings of the Civil Service Commission, and the fact that plaintiff had her deposition admitted she didn't think she got disciplined because of her gender. For those reasons, there was strong evidence of nondiscrimination, and it most plaintiff only created a weak inference from her conclusory evidence of gender discrimination. Therefore, summary judgment was appropriate and the district court should be affirmed. Okay, thank you very much. We have some time for one more. Thank you. When you look at your strongest evidence, what do you do with it? What do you wrap it together? To return to that point that you already made about the failure of common policy being evidence of disparate treatment, there's very good law on that. There's the Morgan-Cowell claim on the evidence. What's the evidence in your uniform policy? Both Deputy Devine and Deputy Perez were put on performance improvement plans. Both of them observed male deputies doing the same exact thing that they had done. So this is a disparate treatment in the way of the failure of common policy. What's the failure of common policy? It's a failure of common policy in the sense that women are being held to a particular discipline. And you're just saying there was direct evidence of discrimination. My understanding of the Othello policy is our policy is that we're going to discipline people in a certain way, and they discipline them in some different way, suggesting that there would be not following their own policies, and that's prejudicial, and you don't need a comparator. What is your evidence without the comparators? The fact that Deputy Perez and actually Deputy Stallworth both were subject to discipline after they complained about a hostile work environment. I have to respectfully disagree with my colleague. They think when employees complain about a hostile work environment, they believe they're facing harassment. And the reality is, the employer is in their cases, and someone has left the forest, so you put them in detention. Disparate treatment is at issue, and this was pleaded. Disparate treatment based on retaliation and treatment based on sentence. Right, and so Sergeant Stallworth, as a woman, complaining about a hostile work environment, then facing discipline. So there's a pattern in practice of disciplining women who complain about discrimination. There's a pattern in practice of disproportionately disciplining women, despite the fact that the policy is supposed to be the same and identical. Just briefly, the disparate treatment cases are the Morgan case from California, and the Ninth Circuit case is actually a blam. And Gonzalez, there are cases from the Ninth Circuit out in the United States. I believe so, I believe so, yes, and they were decided in the Ninth Circuit. If I could close on the jurisdictional argument, it seems that three of the four from 28 U.S.C. 13 states, so 67 are women. Right, and these are a lot of them, so I'll introduce one. I just want to raise it again, because I'm talking to a few people. Thank you very much. Thank you very much.
judges: Hawkins, Berzon, Murguia